UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | **ORDER** |
| ARMANDO JOSE JARQUIN RICO, | (S1) 18 Cr. 661 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

    Defendant Rico is charged with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) (Count One). ((S1) Indictment (Dkt. No. 34))

    Rico was arrested on September 7, 2018. (Dkt. No. 3) On September 12, 2018, Judge Castel, sitting in Part I, ordered Rico detained pending trial on grounds of risk of flight. In ordering that Rico be detained pending trial, Judge Castel cited the following factors: (1) because Rico is charged with a drug trafficking offense that carries a maximum term of imprisonment of ten years or more under the Controlled Substances Act, there is a presumption that no conditions or combination of conditions can ensure his return to court and the safety of the community; (2) the weight of the evidence against Rico is strong; (3) Rico is a citizen of Nicaragua and has significant family and other ties with Nicaragua; (4) Rico has no legal status in the United States and is subject to removal; and (5) there is no extradition treaty with Nicaragua for this offense. (Dkt. No. 88-1 at 19-23)

    Rico is currently detained at the Metropolitan Correctional Center ("MCC"). No trial date has been set in this case. Since August 2019, defense counsel has repeatedly

represented that Rico is likely to plead guilty, and she has repeatedly requested additional time to work toward a pre-trial disposition.1

Rico now seeks release on bail.2  (Apr. 15, 2020 Def. Ltr. (Dkt. No. 85); Apr. 17, 2020 Def. Ltr. (Dkt. No. 92); Apr. 18, 2020 Def. Ltr. (Dkt. No. 93))  The Government opposes his application.  (Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88))

## BACKGROUND

### I.    LEGAL STANDARDS

The Bail Reform Act, 18 U.S.C. § 3142(g), directs courts to consider the following factors in determining whether pretrial release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];

---

1  See Aug. 28, 2019 Conf. Tr. (Dkt. No. 54) at 2-3 ("Your Honor, I do not think we're headed towards a trial. . . ."); Nov. 7, 2019 Conf. Tr. (Dkt. No. 66) at 4-5 (stand-in counsel informing the court that defense counsel "believes it's going to be a plea. . . . I understand a Pimentel letter was given to her for her client to review, and for her to review, and she told me she expects it will be a plea."); Nov. 21, 2019 Conf. Tr. (Dkt. No. 66) at 2-3 ("I had made an application to the U.S. Attorney's Office for them to consider whether or not [the Defendant] would be eligible for a role reduction under the United States Sentencing Guidelines . . . . [F]or that reason I am not yet ready to commit that this case would end up with a plea.  It might still end up with a plea.  I just don't know whether it would be open or whether or not it would be with a plea agreement. . . . I just need additional time."); Jan. 9, 2020 Conf. Tr. (Dkt. No. 76) at 2 ("I have spoken with the prosecutor and hopefully by the end of next week or the week after we should be able to come back to the Court with a plea.  I do not think we are headed towards trial."); Jan. 23, 2020 Conf. Tr. (Dkt. No. 80) at 2-3 ("Your Honor, Mr. Pellegrino and I are supposed to valve him or at least meet for a safety-valve proffer sometime next week and then move forward with a guilty plea . . . . I am hoping, actually, it is wrapped up by next week Friday."); Mar. 5, 2020 Def. Ltr. ("The defense respectfully requests a three-week adjournment in this case. . . . I will schedule a date for my client to plead guilty."))

2  Rico has consented to having his bail application decided on the papers, and has waived his right to a hearing.  (See Apr. 17, 2020 Def. Ltr. (Dkt. No. 89))  The Government also consents to having Rico's bail application decided on the papers.  (See Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88) at 1 n.1)

> (3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there are no conditions or combination of conditions that will ensure the defendant's return to court, or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community.  See United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) ("At all times, however, 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'" (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); United States v. Chimurenga, 760 F.2d 400, 405-06 (2d Cir. 1985) ("The government has the burden of establishing defendant's dangerousness by 'clear and convincing evidence.' . . . The government's burden of proof on the question of risk of flight [for a pre-trial defendant] is not by clear and convincing evidence, but rather by a preponderance of the evidence. . . . "); United States v. Paulino, 335 F. Supp. 3d 600, 610 (S.D.N.Y. 2018) ("Regardless, in a presumption case, the Government still bears the burden of persuasion of demonstrating dangerousness by clear and convincing evidence and risk of

3

flight by a preponderance of the evidence." (citing English, 629 F.3d at 319)); see also 18 U.S.C. §§ 3142(e), 3142(f).

## II.   THE PARTIES' ARGUMENTS

### A.   Defendant Rico

Rico argues that his release "is necessary for the preparation of his defense and because [of] the grave risk the COVID-19 pandemic poses to those incarcerated at the MCC." (Apr. 15, 2020 Def. Ltr. (Dkt. No. 85) at 1)  In support of his application, Rico argues that the Government has not met its burden of proving either that Rico is a danger to the community or a flight risk.  (Id. at 2)

As to danger to the community, Rico contends that "Pretrial Services, the Honorable Kevin Nathaniel Fox, and [Judge Castel] have all correctly found that Mr. Rico's release on bail would not present a danger to the community."  (Id.)

As to risk of flight, "co-workers and family members are willing to face the financial risks of signing a bond for Mr. Rico and [to] provide him with a place to stay in New York City while he is out on bond. . . ."  (Id.)  "Rico has lived and worked in New York for the last three years.  His father and other members of his family live here."  (Apr. 17, 2020 Def. Ltr. (Dkt. No. 92)) at 3)  Rico adds that any risk of flight he might have presented as a result of his Nicaraguan citizenship no longer applies, because "the coronavirus shutdown has made travel anywhere inside the United States difficult, and travel from here to Nicaragua nearly impossible . . . . [T]he last international flight to Nicaragua was on April 9, 2020, and no date has been set for the resumption of flights to [Nicaragua]."  (Id. at 2)  Rico further states that because he is

safety-valve eligible and played a "limited role in the conspiracy," the Court should grant release on bail. (Id. at 1)

### B. The Government

The Government opposes Rico's application for release on bail, arguing that Rico (1) is a citizen of Nicaragua and has significant ties there; (2) participated in the international importation of millions of dollars' worth of heroin from Mexico to the United States; (3) has not rebutted the statutory presumption that he is a danger to the community and a risk of flight; and (4) has not shown that he suffers from "any of the underlying health conditions that would make him at greater risk to contract the [COVID-19] virus, and instead cites only generalized speculation of the risks of the virus in jails." (Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88))

## III. BAIL REFORM ACT ANALYSIS

### A. Nature of the Offenses Charged

As noted above, Rico is charged with conspiracy to distribute and possess with intent to distribute a kilogram and more of heroin. ((S1) Indictment (Dkt. No. 34)) The Government claims that Rico provided a "'safe house' in aid of a major drug trafficking organization that was moving millions of dollars of heroin into the New York City area." (Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88) at 1) Rico was arrested by agents of Homeland Security Investigations ("HSI") following "the controlled delivery to the defendant of two packages containing more than 500 grams of heroin inside Mexican food ingredients. An additional more than ten kilograms of heroin were found hidden inside duffle bags during a subsequent search inside of Rico's apartment." (Id.)

The charge against Rico carries a maximum sentence under the Controlled Substances Act of more than ten years in prison. See 21 U.S.C. §§ 846, 841(b)(1)(A).

Accordingly, there is a presumption that no condition or combination of conditions can ensure his return to court and the safety of the community. 18 U.S.C. § 3142(e)(3). The charge against Rico also carries a ten-year minimum mandatory sentence. See 21 U.S.C. §§ 846, 841(b)(1)(A). However, he is safety-valve eligible, as he has no criminal history. (See Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88) at 2 n.4; Apr. 15, 2020 Def. Ltr. (Dkt. No. 85) at 3; Apr. 17, 2020 Def. Ltr. (Dkt. No. 92) at 1; Bail Hearing Tr. (Dkt. No. 5) at 12)

### B. Weight of the Evidence

The weight of the evidence against Rico is quite strong, given the Court's denial of his suppression motion.3 (Aug. 26, 2019 Order (Dkt. No. 50))

At the time of Rico's arrest, he

> admitted not only to receiving the 500 grams of heroin in the two packages delivered that day, but also to storing more than ten additional kilograms of heroin in his apartment on behalf of others. He also admitted to officers, in sum and substance, that he had participated in the conspiracy for approximately one year, and that the controlled delivery was not the first set of packages that he had received. Indeed, Rico admitted that in the past, he was paid approximately $500 each time he received packages from Mexico, and was directed to open the packages, clean the Mexican food ingredients off of the drugs, and store the drugs until other members of the conspiracy could retrieve them.

(Apr. 17, 2020 Govt. Ltr. (Dkt. No. 88) at 4)

According to the Government,

---

3 On January 7, 2019, Rico moved to suppress "all physical evidence obtained, and all statements made, after he was arrested in his home without a warrant in violation of the Fourth Amendment because all such physical evidence and statements are the fruits of his unconstitutional arrest. Even if the arrest was lawful, the warrantless search of Mr. Rico's apartment violated the Fourth Amendment and his purported consent was involuntary." (Def. Br. (Dkt. No. 22) at 5; see also Def. Mot. (Dkt. No. 20); Rico Decl. (Dkt. No. 23)) The Court conducted a hearing concerning Rico's motion on May 29, 2019, and June 13, 2019. (See May 29, 2019 Tr. (Dkt. No. 40); June 13, 2019 Tr. (Dkt. No. 44)) On August 26, 2019, the Court denied Rico's motion to suppress, except as to a pre-Miranda statement made in response to an agent's question about drugs and weapons in Rico's apartment. As to that statement, the motion was granted. (Aug. 26, 2019 Order (Dkt. No. 50))

>    the ten kilograms of heroin found in duffle bags in Rico's apartment . . . do not
>    appear to be drugs that Rico received via the mail hidden in Mexican food
>    ingredients.  Rather, the ten kilograms appear to be drugs that [co-defendant]
>    Villalona had received via the cross-country vehicle shipments that California
>    authorities were tracking with the DEA, which were then stored in Rico's
>    apartment as a "stash house," until the drugs could be retrieved later, and
>    distributed.  All of this evidence shows that Rico was directly involved in a well-
>    financed, major international drug conspiracy that had the means to transport,
>    store, and distribute at least 30 kilograms of narcotics to the New York City area –
>    in part because of the substantial assistance that Rico provided to the co-
>    conspirators.

(Id. at 4-5)

        **C.**      **History and Characteristics of the Defendant**

Rico is approximately 30 years old and is a citizen of Nicaragua, where he was born and raised.  He entered the United States in 2015 on a visitor's visa that he overstayed. (PTS Rpt. at 2)  Rico has lived in the Bronx since approximately February 2015.  Prior to that, Rico lived in Nicaragua, where his wife, three children, mother and stepfather, siblings, and other relatives reside.  (Id.)  As to family in the United States, Rico's aunt and cousin live in the New York area, id., and his father "is an American citizen [who] is now in the United States." (Apr. 15, 2020 Def. Ltr. (Dkt. No. 85) at 1)

        **D.**      **Danger to the Community**

The massive quantity of heroin recovered from the Defendant's apartment as well as his admissions concerning his role in the conspiracy raise concerns of danger to the community.

        **E.**      **Conclusion**

Having considered the factors listed in the Bail Reform Act, the Court concludes that Rico has not offered evidence sufficient to rebut the presumption that there is no condition or combination of conditions that can ensure his return to court or the safety of the community if he is released on bail.  See 18 U.S.C. § 3142(e)(3)(A).

There is overwhelming evidence that Rico was engaged in a significant drug trafficking conspiracy that distributed massive quantities of heroin, using his apartment as a "safe house." Rico proposes returning to the same apartment if he is released on bail. (Apr. 18, 2020 Def. Ltr. (Dkt. No. 93))  Given these circumstances, Rico presents a danger to the community.

As to risk of flight, Rico is an illegal alien with a wife, children, mother and stepfather, and other relatives in Nicaragua. Acknowledging that he is safety-valve eligible, he still faces a lengthy prison sentence. Moreover, were Rico to flee to his home country, the United States would have no practical way to apprehend him. This nation's bilateral extradition treaty with Nicaragua does not include drug offenses. See Treaty Between the United States and Nicaragua for the Extradition of Criminals, June 15, 1907, 35 Stat. 1869, 1907 WL 1842. Given these circumstances, the bail package proposed by the Defendant is not sufficient to ensure his return to court.

For all of these reasons, the Court concludes that the Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure the return of the Defendant and the safety of the community if he is granted pretrial release.

## IV. "COMPELLING REASON"

Rico contends that – regardless of the factors under the Bail Reform Act – he is entitled to release under 18 U.S.C. § 3142(i), due to the ongoing COVID-19 pandemic. Rico asserts that pretrial release is necessary to protect his Sixth Amendment right to counsel, since the "MCC has been under lockdown, with no attorney visits permitted, since February, and the lockdown likely will continue into the foreseeable future because of the coronavirus. . . . Preparing Mr. Rico's defense under these circumstances is effectively impossible, providing a compelling reason for releasing Mr. Rico at least until prison visits and communications are restored." (Apr. 15, 2020 Def. Ltr. (Dkt. No. 85) at 3)

Rico further contends that he should be released because the risk of contracting COVID-19 presents a grave danger to his health. (Id. at 3-4)

### A.      18 U.S.C. § 3142(i)

Section 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

#### 1.      Danger from COVID-19

There is no question that COVID-19 presents an enormous risk to inmates currently in detention.

> Though the BOP has admirably put transmission mitigation measures in place, see Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an outbreak at the [MCC] (where the Defendant is currently being detained), substantial medical and security challenges would almost certainly arise. A comprehensive view of the danger the Defendant poses to the community requires considering all factors – including this one – on a case-by-case basis.

United States v. Stephens, 2020 WL 1295155, at *2 (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)).

Rico, who is approximately 30 years old, has not asserted that he suffers from any condition that makes him especially vulnerable to COVID-19, such as a respiratory condition or a history of heart disease. The Pretrial Services Report indicates that the Defendant was diagnosed with tachycardia – rapid heartbeat – in 2017, but that he is not receiving any treatment or taking any medication for this condition. (PTS Rpt. at 3) There is thus no basis for this Court to find that Rico is more susceptible to COVID-19 than other inmates. Nor has Rico alleged that he has been exposed to the virus or that he has not received appropriate medical care. Rico "simply makes a generalized argument that the fact of the ongoing pandemic itself is enough to

justify temporary release." United States v. Chandler, 2020 WL 1528120, at *2 (citing United States v. Hamilton, No. 19-cr-54-01 (NGG), 2020 WL 1323036, at *1 (E.D.N.Y. Mar. 20, 2020)).

The Court concludes that the COVID-19 pandemic does not constitute a "compelling reason" for Defendant's release on bail pursuant to Section 3142(i). See United States v. Marte, No. 19-cr-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) ("Pursuant to 18 U.S.C. § 3142(i), the Court concludes that, in the absence of any evidence that defendant has a special condition making him substantially vulnerable to Covid-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release at this point in time."); see also United States v. Steward, No. 20-cr-0052 (DLC), 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020).

### 2. Sixth Amendment Argument

Rico states that the MCC has been closed to all outside visitors since February 2020, that his Sixth Amendment right to counsel has been violated, and that the only appropriate remedy for this constitutional violation is immediate pretrial release. (Apr. 15, 2020 Def. Ltr. (Dkt. No. 85); Apr. 17, 2020 Def. Ltr. (Dkt. No. 92))

The spread of COVID-19 throughout New York State – and the country – has compelled the Bureau of Prisons to suspend all visits, including legal visits. United States v. Stephens, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (citing Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (explaining that "legal visits will be suspended for 30 days" nationwide); see also Federal Bureau of Prisons, COVID-19 Action Plan: Phase Five, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. Inmates do have access to counsel, however. They receive 500, instead of 300, minutes of phone

time per month.  Federal Bureau of Prisons, BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp.  And prison officials have stated that "case-by-case accommodation will be accomplished at the local level and confidential legal calls will be allowed in order to ensure inmates maintain access to counsel.  Attorneys seeking an in-person visit with their client or a confidential call should contact the institution Executive Assistant . . . or contact the appropriate Consolidated Legal Center for the BOP institution." Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp

Although the Court is concerned about Rico's access to counsel, it cannot find that BOP's decision to suspend all legal visits is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large.

The Court concludes that the suspension of legal visits does not constitute a "compelling reason" under Section 3142(i) for Rico's release on bail given the risk of flight and danger to the community that he presents.

## **CONCLUSION**

For the reasons stated above, Defendant Rico's application for release on bail (Dkt. No. 85) is denied. Given the rapidly evolving nature of this health crisis, however, and the challenges it poses to prison facilities, see Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020), his motion is denied without prejudice to renewal in the event that circumstances materially change.

Dated: New York, New York
April 21, 2020

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge